UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRET FRAME, # 839392,

        Petitioner,        Case Number: 1:16-cv-13699
                                       Honorable Thomas L. Ludington

v.

SHAWN BREWER,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

Petitioner Bret Frame, a Michigan prisoner, was convicted of two counts of second-degree murder, Mich. Comp. Laws § 750.317, and two counts of operating a motor vehicle while intoxicated causing death, Mich. Comp. Laws § 257.625(4)(a).[1] He is before this Court seeking a writ of habeas corpus under 28 U.S.C. § 2254. For the following reasons, the petition will be denied.

**I.**

Frame's convictions arise from a car accident that resulted in the deaths of two young men, Justin Bailey and Mark Angelocci. The Michigan Court of Appeals set forth the facts as follows:

> This case arises out of an incident of drunk driving by defendant in Texas Township on June 23, 2011, that resulted in the tragic deaths of Justin Bailey and Mark Angelocci in an automobile accident. The evidence at trial established that defendant is, by his own admission, "an extreme alcoholic" who began abusing alcohol when he was 15 years old. In August 2010, defendant was convicted of operating while impaired by intoxicating liquor. He was also kicked out of his parents' home because his drinking made him, according to his mother, "verbally

---

[1] Petitioner also pleaded no contest to one count of malicious destruction of police property, Mich. Comp. Laws § 750.377b, and two counts of assaulting, resisting, or obstructing a police officer, Mich. Comp. Laws § 750.81(d)(1). Petitioner does not challenge these convictions.

obnoxious" and "hard to live with." Although defendant attempted to turn his life around by going back to school and purportedly remaining sober for eight months, he decided to consume alcohol on June 23, 2011. Defendant's recollection of that day is incomplete. Testimony at trial established that defendant recalled driving around drinking alcohol during the day, visiting a friend, and leaving the friend's home between 2:00 p.m. and 3:00 p.m. Although defendant's next cognizant memory was waking up in jail, numerous witnesses at trial testified about what happened next.

Defendant—while highly intoxicated—drove his pickup truck in Texas Township and the immediate vicinity in a reckless, dangerous, and alarming manner that included illegally passing and almost hitting other motorists and driving at speeds estimated as high as 100 mph on roads with speed limits of 45 and 55 mph. At about 3:30 p.m., defendant rear-ended Bailey's vehicle while both vehicles were heading south on South Sixth Street, causing Bailey's vehicle to spin and ultimately vault into a tree on the other side of the street. Defendant did not stop but, instead, continued driving until he reached his home, where sheriff's deputies, after witnesses provided information implicating defendant, found him at 4:40 p.m. sitting slumped in the driver's seat of his truck with his eyes closed. When the deputies ordered defendant out of his truck, he smelled of intoxicants and exhibited physical signs of intoxication, including glassy eyes, slurred speech, and unsteady balance. Defendant became defiant and violent when the deputies attempted to handcuff him, and a deputy had to use a taser to subdue him. During transport to a hospital, defendant continued to act belligerently, threatening to kill and eat the face of the deputy who was driving the patrol car and repeatedly hitting his own head against the car's Plexiglas partition. At the hospital, defendant's blood was drawn at 6:58 p.m. despite his continued unruly behavior. Testing established that defendant's blood-alcohol level was 0.25 grams per 100 milliliters of alcohol in blood.

*People v. Frame*, No. 310591, 2013 WL 6244695, *1 (Mich. Ct. App. Dec. 3, 2013).

Frame was convicted by a jury in Kalamazoo County Circuit Court. On May 14, 2012, he was sentenced to concurrent sentences of 30 to 75 years for the murder convictions and 7 to 15 years for the operating a vehicle while intoxicated causing death convictions. He filed an appeal of right in the Michigan Court of Appeals raising five claims: (i) the district court erred in binding Frame over on two counts of second-degree murder and the trial court erred in denying the motion to quash; (ii) insufficient evidence supported the second-degree murder convictions; (iii) the trial

court improperly refused to instruct the jury on lesser included offenses; (iv) the trial court improperly refused to instruct the jury on subjective intent; and (v) the trial court improperly refused to instruct the jury or allow an expert to testify regarding the statistical likelihood that an alcohol-related crash in Kalamazoo would result in fatalities. The Michigan Court of Appeals affirmed Frame's convictions. *People v. Frame*, No. 310591, 2013 WL 6244695, *1 (Mich. Ct. App. Dec. 3, 2013). The Michigan Supreme Court denied leave to appeal. *People v. Frame*, 495 Mich. 1006 (May 27, 2014).

Frame then filed a motion for relief from judgment in the trial court, raising these five claims: (i) the trial court's evidentiary rulings violated due process; (ii) the trial court's refusal to instruct on lesser included offenses violated Frame's right to present a defense; (iii) insufficient evidence was presented to show Frame's state of mind; (iv) the sentence violated the Eighth Amendment; and (v) the prosecution failed to preserve material exculpatory evidence. The trial court denied the motion. *See* 7/27/2015 Order (ECF No. 12-16). Both state appellate courts denied leave to appeal the trial court's decision. *See People v. Frame*, No. 329774 (Mich. Ct. App. Dec. 30, 2015 (ECF No. 12-18); *People v. Frame*, 500 Mich. 864 (2016).

> Frame then filed this habeas petition, seeking relief on these grounds:
>
> I. Petitioner's convictions of second-degree murder violate due process because there is insufficient evidence of "malice/intent" to sustain his conviction.
>
> II. Petitioner's right to a fair trial and to a properly instructed jury was violated when the trial court refused to instruct the jury on the lesser included offenses of reckless death and moving violation causing death.
>
> III. The trial court violated the Petitioner's right to a fair trial and improperly instructed jury by denying Petitioner's request for a jury instruction on "subjective intent" for second degree murder.

IV. & V. The trial court abused its discretion in refusing to instruct the jury or allow expert witness testimony regarding the statistical likelihood that an alcohol-related crash in Kalamazoo would result in fatalities or injuries.

VI. Petitioner's ability to present a defense was impaired because the trial court did not allow expert witness testimony about statistics related to the "natural tendency" of drunk driving to cause death. The court also admitted prejudicial evidence about the arrest, which occurred over an hour after the accident.

VII. The court failed to instruct the jury on lesser included offenses.

VIII. There was no showing of the state of mind for second-degree murder.

IX. The Eighth Amendment forbids extreme sentences that are "grossly disproportionate" to the crime.

X. The government violates a defendant's due process right where it fails to preserve material exculpatory evidence regardless of lack of bad faith.

**II**.

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.

### A.

In his first and eighth claims, Frame challenges the sufficiency of the evidence to support his second-degree murder convictions. Frame maintains that the prosecution failed to prove the malice element of second-degree murder beyond a reasonable doubt.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson,* 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* In short, "deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [then] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). The *Jackson* standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

Under Michigan law, the elements of second-degree murder are: (1) a death; (2) caused by an act of the defendant; (3) with malice; and (4) without justification. *People v. Mendoza*, 664 N.W.2d 685, 689 (2003). Malice is defined as "an intent to commit an unjustified and inexcusable killing[,]" *Id.* at 691 (citation omitted), or "the wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Werner*, 659 N.W.2d 688, 692 (2002) (internal quotation marks and citation omitted). "Not all cases of drunk driving resulting in death justify proceeding to trial on charges of second-degree murder." *Frame*, 2013 WL 6244695 at *2 (*citing People v. Goecke*, 457 Mich. 442, 466 (Mich. 1998)). In drunk driving cases malice "is signified by 'a level of misconduct that goes beyond that of drunk driving.'" *Id.* (quoting *Goecke*, 457 Mich. at 467, 469).

The Michigan Court of Appeals held that the facts of Frame's case presented egregious circumstances that went beyond the misconduct of drunk driving and established malice. *Id.* First, the court reviewed evidence concerning whether Frame was aware of the dangers of drinking and driving. Several witnesses testified that Frame had a history of alcoholism and he also admitted as much to a detective the day after the accident. A friend warned Frame that his drinking and driving could result in injury to someone else. Frame attended a victim impact panel hosted by Mothers Against Drunk Driving which addressed the consequences of alcohol-impaired driving. *Id.* The state court concluded that, from this evidence, a rational trier of fact could reasonably infer that Frame knew he should not drink and drive and that doing so could result in injury to someone else. *Id.*

Second, the state court of appeals held that the evidence supported a finding that Frame drank before operating his vehicle on the day of the crash and that he drove while highly

intoxicated. Deputies found Frame passed out in his vehicle outside his home approximately one hour after the accident. He smelled of liquor and was unable to stand without leaning against his truck. *Id.* at *3. Frame was belligerent and threatened to kill one of the deputies. He was described as "out of control" and deputies had to taser him to subdue him. *Id.* On the drive to the hospital for a blood-alcohol test, Frame threatened to kill another deputy or someone else if he was not released. *Id.* Once at the hospital, Frame still was unable to walk and had to be transported in a wheelchair. *Id.* He told hospital security personnel that he was going to kill someone. *Id.* His blood-alcohol level at the time of the test (over three hours after the accident) was three times the legal limit to drive. *Id.*

Further, Frame's unsafe driving occurred both before and after the accident. Six witnesses testified to their encounters with Frame on the roads in the hour before the accident. These witnesses observed Frame travelling at an unbelievably high rate of speed. Two witnesses estimated that Frame's vehicle was travelling near 100 m.p.h. *Id.* at *3-*4. Another estimated Frame's speed to be at least 80 mph in a 45 mph speed zone. *Id.* Sergeant James Campbell, an accident reconstructionist, opined that at the time of impact, Frame was going at least 72 mph and the victims' car was going 45 mph. *Id.* at *5. Campbell found no signs of braking. *Id.* Frame did not stop after he crashed into Bailey's vehicle, sending it careening into a tree. Instead, he drove away from the scene of the accident at an alarming speed. *Id.*

The Michigan Court of Appeals concluded:

> Viewing this evidence in a light most favorable to the prosecution, we conclude that there was sufficient evidence for a rational trier of fact to conclude that the prosecution proved beyond a reasonable doubt that defendant acted with wanton and willful disregard of the likelihood that the natural tendency of his conduct would be to cause death or great bodily harm. Defendant knew he was an extreme alcoholic, that he should not be drinking and driving, and the consequences of drunk

driving; nevertheless, he chose to consume alcohol and drive while highly intoxicated. Further, "[t]his is not a case where a defendant merely undertook the risk of driving after drinking." *People v. Werner*, 254 Mich. App 528, 533; 659 NW2d 688 (2002). Defendant drove in a manner such that he was a significant threat to the safety and lives of surrounding motorists; this was evidenced not only by the outrageous manner of his driving but also by the reactions of his fellow motorists indicating that defendant was not just a motorist violating traffic laws but a significant danger to the safety of others worthy of police intervention. Making matters worse, defendant was driving in an area close to his home; a rational trier of fact could reasonably infer that defendant was aware that the nature of his driving was dreadfully inappropriate in light of the familiar posted and recommended speed limits, no-passing zones, side streets, hills, and 90-degree turns.

Accordingly, there was sufficient evidence of malice to convict defendant of second-degree murder.

*Id.* at *5.

The evidence relied upon by the Michigan Court of Appeals was not only sufficient to support a finding of malice, it was overwhelming. Habeas relief will be denied.

**B.**

Frame's second and third claims concern the jury instructions. He argues that the trial court's denial of his request for jury instructions on two lesser offenses – reckless driving and moving violation causing death – violated his right to a fair trial and to a properly instructed jury. He also argues that the trial court should have given a subjective-intent instruction.

The trial court denied Frame's request for jury instructions on the offenses of reckless driving causing death (as a lesser included offense of second-degree murder) and moving violation causing death (as a lesser included offense of operating a motor vehicle while intoxicated) because the court held they were cognate lesser offenses, not necessarily included lesser offense. (*See* ECF No. 12-13, PageID.1757-1761.) The Michigan Court of Appeals affirmed the holding that the

offenses were cognate lesser offenses not required under State or Federal law. *Frame*, 2013 WL 6244695 at *6.

The Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case. *See Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (holding that a trial court is required to instruct on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant). However, "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). As the Sixth Circuit has noted, even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). Habeas relief will be denied as to this claim because there is no clearly established Supreme Court law requiring that a requested lesser offense instruction be given in the non-capital context.

Next, Frame argues that the trial court violated his right to a properly instructed jury by failing to provide a subjective-intent instruction for the second-degree murder offense. On direct appeal, the Michigan Court of Appeals found "no basis in law" for Frame's claim that he was entitled to a subjective-intent instruction. *Frame,* 2013 WL 6244695 at *8. The court of appeals held, "[T]he trial court's malice instruction under CJI2d 16.5 and its refusal to give a limiting subjective-intent instruction were consistent with Michigan law, the trial court's instructions fairly presented to the jury the issues to be tried and sufficiently protected defendant's rights." *Id.* at *9.

"Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (citing 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). A habeas petitioner is only entitled to habeas relief for a jury instruction claim when the "instruction is so flawed as a matter of state law as to 'infect[ ] the entire trial' in such a way that the conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). A state court's finding that challenged jury instructions "adequately reflected the applicable state law and corresponding state charges" is binding on federal habeas review. *White v. Steele*, 629 F. App'x 690, 695 (6th Cir. 2015). Frame has not shown that the state court's holding was contrary to or an unreasonable application of Supreme Court precedent.

## C.

Frame's next four claims, IV through VII, raise expert-testimony related claims. Frame argues that the trial court abused its discretion and denied him his right to present a defense by refusing to instruct the jury or allow expert witness testimony about the statistical likelihood that an alcohol-related crash in Kalamazoo would result in death or serious injury.[2]

Frame admitted into evidence at trial data from the 2010 Michigan Annual Drunk Driving Audit. The data is "a compilation of accidents involving alcohol, drugs-alcohol or drugs, no alcohol, that resulted in injury or death for the year 2010." *See Frame*, 2013 WL 6244695 at *10, n.6. The trial court, however, excluded the defense expert from testifying that:

---

[2] Respondent argues that the portions of these claims that raise constitutional challenges are procedurally defaulted. Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). In this case, it is more efficient to proceed to the merits of these claims.

> [T]here is a 95 percent probability that the injury crashes where alcohol was involved the injury crash was not caused by alcohol; and there's a 95 percent probability, based upon only the data presented here and the statistical analysis which I conducted that the fatalities were not caused by alcohol involved.

ECF No. 12-11, PageID.1482.

The trial court excluded the testimony because it was irrelevant and the jury did not need an expert's testimony to determine causation. *Id.* at 1483, 1484-85.

The Michigan Court of Appeals affirmed the trial court's decision, reasoning:

> The jury in this case was tasked with determining whether defendant acted in willful and wanton disregard of the likelihood that the natural tendency of his behavior was to cause death or great bodily harm. Untrained laymen would be qualified to determine this issue intelligently and to the best possible degree without Simpson's statistical testimony.... The jury in this case could examine defendant's conduct and, using their common sense and experience, determine whether the natural tendency of his behavior as a whole and in light of the circumstances was to cause death or great bodily harm. *See, generally, People v. Lytal*, 119 Mich. App 562, 576; 326 NW2d 559 (1982) (a jury may employ common sense and experience).
>
> Simpson's statistical conclusion regarding the probability of alcohol causing injury in injury crashes and death in fatal crashes based on a compilation of data from crashes in Kalamazoo in 2010 does not make it more probable or less probable that the natural tendency of defendant's behavior in this case was to cause death or great bodily harm. The data from the audit relied upon by Simpson was limited in scope as it addressed only one element of defendant's conduct to be evaluated by the jury: driving after drinking alcohol. The data did not account for the presence or absence of a variety of variables that may further define the conduct to be examined by a jury, *e.g.*, blood-alcohol level, the manner of defendant's driving, the speed limit, the nature of the road, the presence of other motorists, weather conditions, etc. All of these variables, when considered in light of defendant's intoxication, affect the likelihood that the natural tendency of defendant's behavior was to cause death or great bodily harm. Here, the jury had to consider all of the facts of defendant's case to determine whether defendant's misconduct rose to the level of second-degree murder—facts that go beyond simply whether alcohol was involved. To qualify as second-degree murder, defendant's misconduct had to exceed mere drunk driving causing death. *See Werner*, 254 Mich. App. at 533. Not every case of drunk driving causing death constitutes second-degree murder. *See Goecke*, 457 Mich. at 469. The circumstances of the case must be egregious. *Id.* at 467.

> Accordingly, the trial court's decision to exclude Simpson's testimony did not fall outside the range of principled outcomes.

*Frame*, 2013 WL 6344695 at *10-*11.

Claims regarding the exclusion of evidence under state evidentiary laws are generally not cognizable on federal habeas review. *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012). The "[e]xclusion of evidence only raises constitutional concerns if it has 'infringed upon a weighty interest of the accused.'" *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004) (quoting *United States v. Scheffer*, 523 U.S. 303, 308(1998)). Frame argues that the exclusion of this evidence infringed upon his right to present a defense.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). While the right to present a defense is a fundamental tenet of due process, it is "not unlimited, but rather is subject to reasonable restrictions." *Scheffer*, 523 U.S. at 308 (1998). Indeed, "[a] defendant's interest in presenting ... evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). To determine whether the exclusion of evidence infringes upon a weighty interest of the accused, the court asks whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984). But, "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983).

The Court must balance the state's interest in enforcing its evidentiary rules against the relevance and cumulative nature of the excluded evidence, and the degree to which the excluded

evidence was "indispensable" to the defense. *Crane*, 476 U.S. at 691. State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer*, 523 U.S. at 308 (internal citations omitted).

The state court excluded this evidence on the grounds that it was irrelevant and would not assist the jury in determining a fact at issue. The trial court's desire to exclude irrelevant evidence served a legitimate interest and the exclusion of this testimony was not "'arbitrary' or 'disproportionate to the purposes'" this evidentiary rule is designed to serve. Frame has not shown that the state court's decision that the testimony was not relevant to the elements of the crime was unreasonable. He was not denied his right to present a defense. *Scheffer*, 523 U.S. at 308. Further, given that exclusion of this testimony was reasonable, the Michigan Court of Appeals did not unreasonably apply Supreme Court precedent when it held that Frame was not entitled to a jury instruction predicated on proffered, but excluded testimony.

Frame also raises a conclusory claim that the trial court's admission of evidence regarding the circumstances of his arrest was unfairly prejudicial. "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). Frame has not shown that admission of this evidence denied him his right to a fair trial.

**D.**

Frame's ninth claim concerns his sentences for second-degree murder and operating a vehicle while intoxicated causing death. He argues that the sentences of 30 to 75 years and 7 to 15 years violate the Eighth Amendment's ban on cruel and unusual punishment.

The Supreme Court has held that "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). Courts reviewing Eighth Amendment proportionality must remain highly deferential to the legislatures in determining the appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473-74 (6th Cir. 2003) (citing *Harmelin*, 501 U.S. at 999). "In implementing this 'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the Eighth Amendment.'" *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008) (quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)).

Where a sentence is within the statutory limits, trial courts are accorded "wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000), quoting *Williams v. New York*, 337 U.S. 241, 245 (1949). The "actual computation of [a defendant's] prison term involves a matter of state law that is not cognizable under 28 U.S.C. § 2254." *Kipen v. Renico*, 65 Fed. App'x 958, 959 (6th Cir. 2003), citing *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Frame's sentence is within the statutory limits for his crimes -- up to life in prison for second-degree murder and up to 15 years for operating a vehicle while intoxicated causing death.

There is no reason for this Court to question the state's discretion in fashioning a sentence. Frame's sentence was not grossly disproportionate or excessive.

**E.**

Finally, Frame argues that his right to due process was violated when the police failed to preserve his truck after a police officer tested it. He argues that because the truck was not preserved, additional tests were not performed by police to determine the truck's maximum speed and to potentially impeach witness testimony that the truck was driven in excess of 75 mph.[3]

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, *see Trombetta*, 467 U.S. at 489, versus cases where 'potentially useful' evidence is not accessible. *See Arizona v. Youngblood*, 488 U.S. 51, 58 109 S. Ct. 333, 102 L. Ed.2d 281 (1988)." *United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001). A defendant's due process rights are violated where material exculpatory evidence is not preserved. *Trombetta*, 467 U.S. at 489. For evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488-89. The destruction of

---

[3] Respondent argues that this claim is procedurally defaulted because Petitioner did not raise the claim on direct appeal. The Court finds it more efficient to proceed to the merits of this claim than to address the claimed procedural default. *See Hudson*, 351 F.3d at 215.

material exculpatory evidence violates due process regardless of whether the government acted in bad faith. *See id.* at 488; *Youngblood*, 488 U.S. at 57.

A different result ensues when "deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 56. Absent a showing of bad faith, the failure to preserve *potentially* useful evidence is not a due process violation. *Id.* at 58. A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003). In short, to prevail on a destruction-of-evidence claim, a defendant needs to show that the evidence was exculpatory or that the police acted in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004). And, on habeas review, a petitioner must show that the state court's decision was contrary to *Trombetta* and *Youngblood* or an unreasonable application of that precedent.

Frame's claim fails both because the truck was tested and there is no evidence the police acted in bad faith. Sergeant Donald Ester of the Kalamazoo County Sheriff's Department testified that he was assigned to drive Frame's vehicle to determine whether it was capable of reaching the high speed estimated by witnesses. Ester drove the vehicle until it reached a speed of 75 mph. At that point, he discontinued the test because a plow light on the truck became unfastened and flew onto the hood of the vehicle. He observed that it was attached to the vehicle by only two wires. Ester concluded that continuing to accelerate could place him or other motorists at risk and he ended the test. Ester believed that, if he had not discontinued the test, the truck would have continued its steady acceleration. (*See* ECF No. 12-11, PageID. 1347-50.)

Second, assuming police failed to preserve the vehicle, habeas relief is not warranted. The most that can be said of the vehicle is that it was only potentially useful evidence. Frame's claimed due process violation is reviewed under *Youngblood,* which requires a showing that: (1) the State acted in bad faith in failing to preserve the evidence; (2) the exculpatory value of the evidence was apparent before its destruction; and (3) Petitioner would be unable to obtain comparable evidence by other means. *Youngblood,* 488 U.S. at 57. Bad faith is not shown where the failure to preserve evidence is the result only of negligence. *Id.* at 58 (finding no bad faith where police negligently failed to refrigerate clothing and to perform tests on semen samples). Even gross negligence in failing to preserve potentially exculpatory evidence does not satisfy the bad faith requirement. *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001). Frame presents no evidence of bad faith and the Court finds no due process violation.

## IV.

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

Reasonable jurists would not find the Court's assessment of Petitioner's claims to be debatable or wrong. A certificate of appealability will not be issued. Petitioner will not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

**V.**

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED.**

Dated: December 17, 2019          s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Bret J. Frame** #839392, G. ROBERT COTTON CORRECTIONAL FACILITY, 3500 N. ELM ROAD, JACKSON, MI 49201 by first class U.S. mail on December 17, 2019.

s/Kelly Winslow
KELLY WINSLOW, Case Manager